### GREGORY *v.* McPHERSON.

No forfeiture accrues of a title otherwise good, by failure to present it to the Board of Land Commissioners. BALDWIN, J.

Possession of land at the death of a party gives *prima facie* title to his heirs, or representatives. Id.

The *expediente*, consisting of the petition, plat, reference, report, act of concession, approval, grant, etc. filed in the archives of the Mexican Government is as much an original document as the grant delivered to the grantee. Id.

A sworn copy or exemplification of such originals is evidence, and the originals ought not to be removed from the governmental offices. Id.

Wherever the acts of public officers are authenticated by their records, the records are evidence of the acts. Id.

The decrees of the Board of Land Commissioners, and of the District Court are not indispensable to a recovery in ejectment on a grant, but are admissible, and conclusive against the government, and against those holding by its license or permission. Id.

The petition by an executor for the sale of real estate, must set forth the amount of the personal estate that has come to his hands. This petition, with this averment, are jurisdictional facts, without which, the order of sale is void. Id.

The petition for the sale of land, and the subsequent proceedings must be conducted by all the executors who qualify, or the sale is void. TERRY, C. J.

APPEAL from the Seventh District.

The case is stated in the opinion of the Court.

*E. W. F. Sloan,* for Appellant.

I.  If the copy of the grant, signed by the Governor and countersigned by the Secretary of the State, annexed to, and forming part of, the *expediente* in the archives of the government, is not to be regarded as primary evidence, it was admissible, as the next best evidence. (*Minor* v. *Tillotson,* 7 Pet. 99, 100; *vide* also, *Proprietors of Braintree* v. *Battles,* 6 Vt. 399; *Renner* v. *Bank of Columbia,* 9 Wheat. 596; *The King* v. *Inhabitants,* etc. 4 Maule & Sel. 48.)

II.  1st. The *expediente* was properly admissible as primary evidence—as evidence of the highest character known to the law.

It is a public record of public official acts, performed by public

agents of the government, whilst performing public duties, in disposing of portions of the public domain, preserved in a public office, under the charge and in the custody of duly constituted officials.

Records and public documents of that kind constitute the highest character of evidence, both under the rules of the civil and of the common law. (1 Starkie's Ev. 160—173; B. N. P. 229; *Patterson* v. *Winn,* 5 Pet. 241; *U. S.* v. *Arredondo,* 6 Id. 728.)

2d. If the original *expediente* in the public archives is to be regarded in the light of a record or public official document, a sworn copy or exemplification was properly admissible in evidence. (1 Stark. Ev. 181—185; B. N. P. 294; 1 Starkie's Rep. 183; 4 Campb. 372; 6 Cow. 751.) Not only records, but all public documents which cannot be removed from one place to another, may be proved by means of a copy proved on oath to have been examined with the original. (1 Stark. Ev. 155; *Hedden* v. *Overton,* 4 Bibb. Rep. 406; *Commonwealth* v. *Alburger,* 1 Whart. 472; *Kingston* v. *Lesley,* 10 Serg. & R. 387.)

3d. It is not indispensable to the introduction of such proof, that the official signatures or seals appearing to the originals on file, should be first proved, provided they are found in the proper repository. (*Ross' Lessee* v. *Cutshall,* 1 Binn. 399; *Williams* v. *Sheldon,* 10 Wend. 659.)

4th. It was suggested in the Court below that the exemplification offered in evidence was certified to be the copy of a copy. It was certified to be the copy of the record returned into the office of the Surveyor-General by the Secretary of the Board as directed by law. In point of fact, however, it was traced from the original—the mistake is in the form of the certificate.

It has, sometimes, been held that the copy of a copy is inadmissible, solely on the ground, however, that it was not compared with the original, and, therefore, by necessity not proved to be a true copy of the original. (*Winn* v. *Patterson,* 9 Pet. 663—677.)

In this case, however, the copy offered in evidence was carefully compared with the original. As a sworn copy, therefore, there is no pretended foundation for the objection. Besides, when transcripts are made out and lodged in public offices by

authority of the government, a copy therefrom cannot be objected to as being the copy of a copy. ( *Videll's Heirs* v. *Duplautier,* 9 La. 525; *Hedden* v. *Overton,* 4 Bibb. 406.)

III.   The principal objection made to the decisions of the Board of Land Commissioners and the District Court, was that they were *res inter alios.*

Another objection has been suggested, to the effect that the Board of Commissioners did not properly constitute a Court:

" It is not essential to the reception of evidence of this nature that the inquiry should have been made by virtue of some judicial authority, and by means of witnesses examined on oath; it is sufficient if made by virtue of competent authority on behalf of the public, and on sufficient matter of public interest." (1 Stark. Ev. 168, 169; F. N. 228; *Vicar of Kellington* v. *Trinity College,* 1 Wils. 170; 4 Camp. 126; *Tooker* v. *Duke of Beaufort,* 1 Burr, 146; 4 Dow, 297, 320.)

But the proceedings before the Board are judicial. Evidence is heard, and the title to real estate tried and decided.

IV.   The deed of conveyance by one of the executors to the plaintiff of the premises was sufficient to pass the estate.

It is a rule of the common law, that where a mere naked power is conferred upon two or more, as a matter of personal trust and confidence, without any provision to the effect that a less number may execute it, such power must be executed by all jointly; and there is no survivorship. (Co. Litt. 112 b; 10 Pet. 564; 2 Humph. 379.)

This was cured by the Statute of Henry 8, Chap. 4, which provided that, when part of the executors refused to take upon himself or themselves the administration, etc. then a sale by those who do act should be good.

Under the Statute of Henry 8, a mere neglect to act has been held to be a refusal. (4 Munf. 345; 4 Yerger, 16; 1 Bat. & Dev. 389; 2 Green. N. J. 383.)

Our statute goes further still. (Comp. Laws, 382, Sec. 47.)

The doctrine, however, in regard to the execution of powers of sale contained in wills has no application to the case at bar.

The sale was not made under power given by the will of Juana Sanchez de Pacheco. It was made pursuant to the decree of the Probate Court.

*John Currey,* for Respondent.

I. The papers offered in evidence by the plaintiff, purporting to be a copy of an *expediente* were properly excluded.

It is questionable whether an *expediente* is a public record in any legal sense. If it be a public record it is of a mixed nature, partaking both of a public and private character. (1 Stark. Ev. 100; 1 Greenl. Ev. Sec. 474.) In which case it cannot be adduced by a party in support of his claim against a stranger. (1 Greenl. Ev. Sec. 493; *Highland Turnpike Co.* v. *McKean,* 10 John. 154; *Rex* v. *Mothersall,* 1 Stra. 93.)

The word "record" imports something of more permanence than the deposit of papers in the form of an *expediente* in a public office.

Books of public offices, journals of legislative bodies, and official registers, are of the character of public records which, by the common law, are admissible as competent evidence of the facts they contain. (1 Greenl. Ev. 493.) But they must be accompanied by proof, that they come from the proper repository. (Id. Sec. 485; 1 Stark. Ev. 158, 183.)

Where the nature of the case admits, some proof must be given of some act done in reference to the documents offered in evidence, as a further proof of their genuineness. (1 Greenl. Ev. Sec. 143.)

The *expediente,* a copy of which was offered by defendant as primary evidence, was not preserved in the form of a record, but merely in the form of a deposited manuscript without even an indorsement thereon or an entry thereof to indicate when the same was deposited.

The document purporting to be a grant made by Governor Figueroa to Juana Sanchez de Pacheco, a copy of which the plaintiff alleges he offered in evidence, falls under the rule by which the competency of the *expediente,* as evidence *per se,* shall be adjudged; because such grant or copy thereof, attached to the *expediente* was not preserved in any book of record.

The copy of the grant offered on the part of the plaintiff requires that it should be noted or registered in the corresponding or proper book; yet it was not pretended on the trial, nor did it appear by the certificate of the Surveyor-General, that the copy

produced was from any book or register. (*United States* v. *Cambuston*, 20 How. 61.)

The copy of the pretended grant was a copy of the copy annexed to the *expediente*. A grant when made by the Governor was delivered to the grantee, and sometimes a copy thereof was annexed to the *expediente*, but this was not invariably the practice; and such copy did not properly constitute a part of the *expediente*.

The originals, of which the papers offered in evidence purported to be copies, would not, if produced, have been evidence *per se* of the matters therein contained; but proof of the genuineness of such originals would have been required. (1 Stark. Ev. 151, 152.)

The rule of evidence established by the authorities cited on behalf of Appellant in relation to the proof of exemplifications of the class of documents and records mentioned in those authorities, is not controverted. The answer is that an *expediente* and Mexican grant do not, nor do either of them, fall within any rule there mentioned. There is no great seal, or seal of a Court of record, importing verity of the document or record sought to be given in evidence.

II. The evidence of the existence of a grant, delivered, on behalf of the Mexican nation, to Juana Sanchez de Pacheco, embracing the land in controversy, was slight and unsatisfactory; and the evidence of the loss of such grant was insufficient. (1 Greenl. Ev. Sec. 558.) But before any evidence can be given of the loss of a written instrument it must appear that such instrument existed. (1 Greenl. Ev. Sec. 549.)

III. The evidence of the genuineness of the alleged existing *expediente*, and copy of the grant thereto annexed, by the production of a traced copy thereof, with the testimony of a witness that he had on a former occasion, at the Surveyor-General's office, examined the signatures of the various persons signed to the several documents composing such *expediente*, and that such signatures were genuine, was insufficient and incompetent.

Before secondary evidence can be given of a deed or other instrument of writing, a proper cause therefor should be assigned; no such cause was assigned on the trial. For aught that ap-

peared, the custodian of the originals could have been compelled by *subpœna duces tecum* to have produced them. If the originals could not have been removed from their repository, still, they could have been proven by the depositions of witnesses at, or convenient to, the office of the Surveyor-General. Defendant had a right to inspect the originals:

1st. In order that he might be enabled to cross-examine the witness understandingly in relation thereto, and especially as to the question of their genuineness.

2d. In order that he might impeach them by showing that they were fraudulent and void. (1 Greenleaf's Ev. Sec. 446; Stark, Ev. 96.) The defendant insists that he had the right to see the paper, and also the writing and stamps constituting the original documents; from all, or from some portion of which, it might have appeared that the originals were fabrications for unlawful and sinister ends.

The Appellant's counsel not only relies upon the ground that the copies offered in evidence were exemplifications of a record, but that they should have been admitted as sworn copies.

The law requires the best evidence of which the nature of the thing to be proved is capable. If the best evidence cannot be obtained, the next best in degree should be produced. "Exemplifications," says Ch. Baron Gilbert, "are of better credit than any sworn copy." (Gilbert's Ev. 14; 10 Mod. 126.) If the original, or the record thereof, itself, would not be evidence, a sworn or certified copy would not. (*Kerns* v. *Swope*, 2 Watts, 75; *Winn* v. *Patterson*, 9 Peters, 676, 677.)

Before a copy can be given in evidence, it should appear that the witness by whom it is to be proved such, had compared it with the original, in the mode prescribed by law. (1 Greenl. Ev. Secs. 506, 264, 565, 566.)

The copy of the alleged grant sought to be proved by Salvio Pacheco, was but a copy of a copy. A copy of a copy is not admissible, whatever be the mode of its authentication. (*Whitacre* v. *McIlhany*, 4 Mumf. 310; *Morris* v. *Vanderen*, 1 Dall. 65; Gilbert's Ev. 9.)

IV. The exemplifications of the decrees of the Board of Land Commissioners, and of the United States District Court, were properly rejected.

No objection was made to the proof of these decrees by exemplifications thereof, but only as to their competency or effect.

The objection to such decrees as evidence, was not so much because they were *res inter alios acta,* as for the reason that they were incompetent evidence for the purpose of which they were offered, to wit: to establish the genuineness of the alleged title of Juana Sanchez. It had appeared, before the decrees were so offered in evidence, that an appeal from the decree of the District Court had been granted. (20 How. 261; see, also, 6 Id. 106; 13 Id. 150, 151.)

Were it admitted that the proceeding in cases of California land claims before the Board of Land Commissioners, or before the Federal Courts, is a proceeding, as it is technically termed, *in rem.* and that therefore the final decree in such a case is binding against all persons, even then such decrees were not only incompetent for the purpose of establishing the usual necessary legal consequences of such a decree, but were still more objectionable as proofs of the supposed genuineness of the alleged *expediente* and grant in question. (1 Stark. Ev. 228.)

The objection to the competency of these decrees as evidence was two-fold:

1. It appeared that the decree of the Commissioners was reversed, and that the decree of the District Court was not final. (See *Sanders* v. *Whitesides,* 10 Cal. 89, 90.) An appeal suspends the judgment, and no action will lie on it. (*Marshall* v. *Lester,* 1 N. Car. Law Rep. 100.) The order granting the appeal was sufficient, and by it the cause was removed to the Appellate Court. (*Buckingham* v. *McLean,* 13 How. 151.)

2. The whole proceedings upon which the decrees were founded were not produced.

This was necessary, if the design was to prove anything more than the fact that such decrees were made. (1 Greenl. Ev. 511; *Jones* v. *Randall,* 1 Cow. 17.) In no case is a decree, standing alone, receivable to prove the facts upon the supposed existence of which it was rendered. (*Stevens* v. *Jack,* 3 Yerg. R. R. 403; *Lovell* v. *Arnold,* 2 Mumf. 267; *Hollingsworth* v. *Barbour,* 4 Pet. 466; Gilb. Ev. 7 Ed. 17.)

V. The plaintiff failed on the trial to establish, by competent

evidence, title in himself to the land in controversy, as successor in interest of Juana Sanchez de Pacheco.

The proceedings, in the Probate Court, were unauthorized and void. (*Jones* v. *Reed,* 1 John. Cas. 20.) No intendment is made in favor of the regularity of proceedings of Courts or officers of inferior or special jurisdiction. (*Bloom* v. *Burdick,* 1 Hill, 130; *Denning* v. *Corwin,* 11 Wend. 651; *Van Etten* v. *Jilson,* 6 Cal. 19; *Small* v. *Gwinn,* 6 Id. 449; *Whitwell* v. *Barbier,* 7 Id. 64; *Feillett* v. *Engles,* 8 Id. 76; *Foot* v. *Stevens,* 17 Wend. 483; *Hart* v. *Seixas,* 21 Id. 40; *Haynes* v. *Meeks,* 10 Cal. 110.)

The petition for the sale of the land did not set forth the amount of personal estate that had come to the hands of the executors, nor the condition or value of the respective portions or lots of the real estate of which the testatrix died seized, nor the ages of the heirs or devisees. (Comp. Laws 399, Secs. 154, 155.)

No officer can acquire jurisdiction by deciding that he has it. (*Sibbley* v. *Waffle,* 16 N. Y. Rep. 190; *Schneider* v. *McFarland,* 2 Com. 462; *Prosser* v. *Secor,* 5 Bart. 611, 612; *Harrington* v. *The People,* 6 Barb. 610; see, also, *Becket* v. *Selover,* 7 Cal. 215; *Pond* v. *Pond,* 10 Id. 120; *Schneider* v. *McFarland,* 2 Com. 462, 463; Comp. Laws, 399, 400, Secs. 154—163.)

The requirements of the statute are not directory. The petition, setting forth the facts as required by Section 155, is necessary to give jurisdiction to the Probate Court. (*Davison* v. *Gill,* 1 East. 64; see, also, *Atkins* v. *Kinnan,* 20 Wend. 249; *Sheldon* v. *Wright,* 1 Selden, 523, 624; *Ford* v. *Wadsworth,* 15 Wend. 449; *Harrington* v. *The People,* 6 Barb. 610.)

The plaintiff, as the purchaser at the sale made by the executor, was bound to show affirmatively the existence of the facts on which the right to sell was made to depend. (*Sharp* v. *Spier,* 4 Hill, 86; *Striker* v. *Kelly,* 7 Id. 29.)

Another objection to the evidence of title offered by plaintiff is, that the whole proceeding had in the Probate Court was had by one of the executors only. (Toller's Law of Executors, 30; 4 Kent's Com. 325.) Executors are but one person in law, and the acts done by one of several, relating to the delivery, sale, or release, of the testator's goods, are deemed the acts of all, for they have a joint and entire authority. (*Murray* v. *Blatchford,*

1 Wend. 616; *Hudson* v. *Hudson*, 1 Atk. 460.) But a power to sell land, conferred by will on several executors, must be executed by all who proved the will. (*Wasson* v. *King*, 2 Dev. & Battle, 262. See, also, *Peter* v. *Beverly*, 10 Pet. 663; *Osgood* v. *Franklin*, 2 John. Ch. 18, 19; and *Franklin* v. *Osgood*, 14 John. 553; Comp. L. 382, Sec. 47.)

BALDWIN, J. delivered the opinion of the Court.

This was ejectment to recover two hundred and seventeen acres of land in Contra Costa County, described in the complaint, as a part of the Rancho los Nueces or San Miguel.

It was admitted on the trial, that the land sued for was within the boundaries of the Rancho San Miguel, that defendant had been in the possession of the land since October, 1857, and that the executors of Juana Sanchez de Pacheco, (to the latter of whom a grant is claimed to have been made by the Mexican Governor, Figueroa, in 1833,) executed a deed to the plaintiff of this tract.

The District Court nonsuited the plaintiff, upon motion of the defendant, and the questions involved, are, as to the propriety of that order. This involves the necessity of a careful consideration of the proofs.

The plaintiff claims title by a grant of the rancho to Juana Sanchez de Pacheco, in 1833, approved by the Departmental Assembly, and by deed of the executor of the grantee after her death, pursuant to an order of the Probate Court. Most of the evidence offered by the plaintiff was rejected. The rulings of the Court in this respect constitute the main errors assigned. The propositions to which the proof was directed, are simple. 1. The title of the grantee. 2. The deraignment of title to the plaintiff.

In order to establish the grant, Don Salvio Pacheco was sworn as a witness for the plaintiff. He was shown a traced copy of an original *expediente* on file in the office of the United States Surveyor-General. The *expediente* consisted of the petition of the grantee and plat, the reference for information, the report, the act or decree of concession, the reference to the Departmental Assembly for approval, the approval, and the grant. This witness testified that he went to the office of the United States

Surveyor-General, and there examined these documents, that he did this carefully, that he compared the traced copy with the original, and found they agreed literally; that he was acquainted with the signatures of the various officers to the papers, and that these signatures were those of the officers purporting to make them; that he knew their handwriting; was sixty years of age, and was himself a member of the Departmental Assembly. Joaquin Y. Castro and Ferdinand Pacheco, two other witnesses for the plaintiffs, prove the execution of the final grant, that it was received by the grantee, that she entered under it, and that she occupied and cultivated the ranch until the time of her death. The claim for the ranch was duly presented to the Board of Commissioners, under the Act of Congress of 1851, and was confirmed by its decree, and also by that of the United States District Court on appeal, (though this proof was not necessary as no forfeiture accrues of a title otherwise good, as we have intimated in a recent case, by a failure to present it to the Board.)

The grant alleged to have been delivered to the grantee, was not offered in evidence—the plaintiff alleging that it was lost, and that it was not in his power to produce it. The showing on this subject will be considered hereafter. One John Wilson proved that it was the custom, during the time Figueroa was Governor of California, to annex to, and make part of, the *expediente*, an exact copy of the final grant.

The plaintiff offered to read in evidence a copy of the grant in the *expediente*, in connection with the rest of the *expediente*. But the Court excluded it, on the ground that the absence of the copy of the grant, which issued, and had been delivered to the grantee, had not been satisfactorily accounted for, and that it could not be received as primary evidence.

The plaintiff offered in evidence the decision of the Board of Commissioners and District Court of the United States, in the same connection. These were rejected.

The plaintiff then offered in evidence the will of Juana Sanchez, the probate thereof, the appointment of executors, the application to sell land for the payment of debts, the order of sale, report of sale, order of confirmation, the deed by the acting exe-

cutor to the plaintiff, and other papers connected with the sale; which proffered proofs were all rejected.

1. And the question comes up, whether this proof, thus offered and given, was sufficient to go to the jury on the trial as showing *prima facie* the plaintiff's right to recover. We have given a mere outline of the case, in order to make intelligible our decision; but, in examining the propositions involved, it will be necessary to go much more into detail.

It may be remarked, in the outset, that it is not quite apparent why the plaintiff should have put himself to the trouble of all this circumstantial proof of his predecessor's title, since the rule is, as we understand it, that the possession of the ranch, by Mrs. Sanchez, at the time of her death, amounted to a legal seizin, throwing the descent and *prima facie* title, at least, upon her heirs or representatives. It would seem that, as against a defendant, showing, so far, no title, that the possession of the ranch, at the time of her death, by Mrs. Sanchez, was sufficient proof in favor of her heirs, or of those succeeding to their claim.

As, however, the claim of the plaintiff was not made upon this ground, but presented to the Court on different grounds, we do not feel disposed to review the alleged errors in reference to any other grounds than those presented by the counsel.

We shall first examine the grounds of the rejection of the copy of the grant signed by the Governor, and countersigned by the Secretary of State, annexed to, and forming a part of, the *expediente*, in the archives of the government. Two questions arise on the admissibility of this document: 1. Whether it is primary proof of what it imports, that is to say, is it a copy in the sense in which that word is used in the books, or is it an original, or in the nature of an original document? 2. If a copy in this sense, was the evidence sufficient to let it in as secondary testimony?

We are at a loss to know upon what ground such a document can be denied the weight of original evidence. It was made, and signed, and authenticated, as a record by public officers in the discharge of public duties. The papers were retained in the custody of appropriate public officers, for the purpose of proof—and the highest and most authentic proof—of their own action.

Gregory *v.* McPherson.

The documents receive the stamp, and the most satisfactory stamp, of official authenticity. The signatures are made on this, as on the paper sent out by the department. We cannot see why such papers should be called copies, or why, in the scale of proofs, they should stand in any subordinate relation to the paper handed to the grantee. If not counterparts, or duplicates, it would seem that the original paper is the record retained by the department as a part of its permanent records.

The reason, which assigns to a copy of a paper its grade of inferiority to the original instrument, wholly fails of application here. That reason is, that the copy may not represent the transaction accurately; it may be simulated; it may be incorrect, and is worthless in everything in which it departs from the original; it bears no marks of authenticity. The fact that the original, which is conclusive of its own contents, after proof of its execution, is kept back, affords suspicion that the copy is not what it imports. But all this reasoning fails here. The government cannot be supposed to falsify its own records; it is interested in preserving them. The grant is itself a public record, and the paper issued to the grantee is itself but a ministerial act of the same officers, who make and preserve the record of it. If authority were needed to support these plain propositions, they are abundant. (1 Starkie's Ev. 160—174; *Patterson* v. *Winn,* 5 Pet. 239; Id. 241; *U. S.* v. *Arredondo,* 6 Pet. 728.)

We cannot presume that any governmental system of granting land could be so loose as that no records were preserved by the granting power. And it follows, we apprehend, as a universal rule, that, wherever the acts of public officers are authenticated by their records, these records are evidence, in all Courts of Justice, of those acts. If, by law, or usage, having the force of law, a California grant was matter of record, then it would seem to follow that the record is proof of the grant, especially where, as in this case, the record is itself an exemplification of the grant, and contemporaneously signed by the same officers issuing the grant. We think the record retained, in such a case, is as high original evidence of what it imports, as the original protest of a Notary, or act of sale in the presence of the officer in Louisiana.

The original *expediente* in the public archives being evidence, it follows that a sworn copy or exemplification is admissible. (1

Starkie's Ev. 181.)   This must be so.   It would be so in the absence of any legislation.   This is the common law rule.   It would be a most dangerous doctrine to hold that these original documents, in which public and private interests are so largely involved, must be carried around to the various Courts throughout the State, to the great danger of loss or destruction.   Upon proof, therefore, of the existence of the paper in the proper depository, the law permits proof of a copy proven to have been examined with the original and found a true transcript.   (1 Starkie's Ev. 151 ; see, also, *Williams* v. *Sheldon,* 10 Wend. 658.)

It does not matter that the exemplification offered in proof was a copy of a copy.   We understand the evidence to be that *the particular copy offered* was carefully examined and compared with the original.   The force of it as evidence is not in the certificate, or in the manner in which the clerical office of copying it was performed, but in the fact that it is a correct copy of an original paper or record.

2. We see no objection to the introduction of the decrees of the Board of Commissioners, and of the District Court, though this evidence was not necessary, at least not indispensable, to the recovery by the plaintiff.   We do not understand that this objection was well taken on the ground that these decrees were not final.   Whether the United States District Court sits as a Court, in the judicial interpretation of such a tribunal, or as a mere inquisition, the law has given to its adjudications conclusive force as against the government, and, as against it or those holding possession merely by license or permission of the government, it would seem that this decree was admissible proof, tending to show a judicial recognition of this claim of the plaintiff.   But we do not regard this evidence as material.

3. The last and more difficult question is, as to the effect of the proceedings of the Probate Court, through which the plaintiff deduces his title.   If the position of the defendant be sustainable, that these proceedings are wholly void, it is unimportant whether the Court erred in the other respects noticed, as no harm thereby could be done to a party having no title.

The position taken by the able counsel for the Respondent is not that these proceedings can be avoided for irregularity or error—for they are assailed collaterally; but that they are void,

and passed no title; and this because the Probate Court had no jurisdiction to decree the sale.

The plaintiff offered an exemplification of the will of Mrs. Pacheco. The will was probated in the Court of Santa Clara County, 7th October, 1853, and the order of probate recites that Joaquin Y. Castro and Francisco Lightstone were appointed executors. The will is dated 26th August, 1853, and devises the San Miguel Ranch to certain relatives, in certain proportions, some of these devisees being infants. Both the executors named in the will qualified. F. Lightstone, styling himself executor of the last will and testament of Juana S. Pacheco, on the 24th of November, 1856, filed his petition in the Probate Court. The petition states "that there is due Robert Allen, Esq. from the estate of the deceased, on his account, as allowed by the Court, and unpaid, the sum of one thousand dollars; and to the petitioner, on account of the estate of the deceased, and expenses of administration and his fees as executor, thirty-seven hundred and fifteen dollars, or thereabouts"; "that there are no funds belonging to said estate in the hands of said executor, and that there is no personal property of said estate that remains unsold," "wherefore *this executor* prays an order of sale of all the real estate," the value of which is not given. Afterwards, about 12th January, 1857, as we judge from the affidavit, the petitioner amended his petition, by leave of the Court, and in and by this amendment, a more particular description is given of this San Miguel tract, and a valuation or estimate given of the real estate, according to which it amounts to some fifty-five thousand or sixty thousand dollars; also, the devisees are named.

December 13th, 1856, order for hearing the petition and citation to the heirs. January 12th, 1857, fixed for the hearing. March 9th, 1857, the application came on to be heard; the Court orders a sale of a portion of the San Miguel Ranch, and marked by certain lines; the tract so sold containing seven hundred and three acres. The decree recites that the proof of service of the copy of the former order was made on the adult persons interested, and the guardians of certain infants.

It is not necessary to follow the proceedings further than to state that the land was sold for some five thousand dollars; the plaintiff was the purchaser, and the sale was confirmed and deed executed.

The Statute (C. L. 399, Secs 154—156,) provide as follows :

" SEC. 154. When the personal estate in the hands of the executor or administrator, shall be insufficient to pay the allowance to the family, and all the debts and charges of the administration, the executor, or administrator, may sell the real estate for that purpose, upon the order of the County Judge.

SEC. 155. To obtain such order he shall present a petition to the Probate Court, setting forth the amount of personal estate that has come to his hands, and how much thereof, if any, remains undisposed of, the debts outstanding against the deceased, as far as the same can be ascertained, a description of all the real estate of which the testator or intestate died seized, and the condition and value of the respective portions and lots, the names and ages of the devisees, if any, and of the heirs of the deceased, which petition shall be verified by the oath of the party presenting the same.

SEC. 156. If it shall appear by such petition that there is not sufficient personal estate in the hands of the executor or administrator to pay the allowance to the family, the debts outstanding against the deceased, and the expenses of the administration, and that it is necessary to sell the whole, or some portion of the real estate for the payment of such debts, the Probate Judge shall thereupon make an order directing all persons interested to appear before him at a time and place specified, not less than four, nor more than ten, weeks from the time of making such order, to show cause why an order should not be granted to the executor or administrator to sell so much of the real estate of the deceased as shall be necessary to pay such debts."

The authority of the executor or administrator to sell the real estate comes from these provisions. It is very clear that the Judge has no right to order, nor the administrator or executor to make the sale, except in the event and according to the directions given in the Act.

The petition in this case does not set forth the amount of personal estate that came to the hands of the executors, nor is it elsewhere shown. That statement is indispensable. It is not for the executor or the administrator to say whether the sale is necessary for the payment of debts. It is for the Court to decide

Gregory *v.* McPherson.

this, and, therefore, the materials for its judgment must be furnished to the Court by the petitioner. The administrator or executor cannot squander the personal estate, and then claim a right to confiscate the property of the heirs by a forced sale of the real estate. The question is not, whether there is any personalty in the hands of the administrator at the time of the application; but the statute says: " To *obtain such order*, he shall present a petition to the Probate Court, setting forth the amount of the personal estate that has come to his hands." This petition, with these required statutory averments, are jurisdictional facts. Upon such a petition the Court has power to act—upon no other. There is no difference between no petition at all and a petition lacking the substantial averments required by statute. Jurisdiction is the power to hear and determine; it involves the capacity to act; and in these proceedings for forced divesture of title of heirs and devisees, as it is only by the law that the title is taken away, so it follows that the party, tracing his title through the law, must show a substantial compliance with its provisions. It may be, and is, conceded by us, that, after jurisdiction has attached, errors do not vitiate the proceedings, when the attack on them is collateral. But this concession does not aid the Appellant; for the very question is, when did the jurisdiction attach, or what is necessary to give jurisdiction? And the answer is, a petition setting forth substantially the facts required by the statute.

This very question arose in the case of *Bloom* v. *Burdick*, (1 Hill, 133.) The New York statute seems to be like ours in substance, requiring the administrator to accompany his petition with an account of the personal estate and debts, so far as he can discover the same. Indeed, the case in Hill goes far beyond the necessities of this case.

Bronson, J. delivering the opinion of the Court, said :

" It is said that the application for a sale of the real estate was not accompanied by an account of the personal estate and debts of the intestate ; that, instead of an account made *at that* time of the personal estate, reference was had to the usual inventory which had been previously filed. This is an important point, because a petition and account are essential to the Surrogate's jurisdiction in ordering a sale. The administrator is in

all cases to make and exhibit an inventory of the personal estate, within six months after the grant of administration. And without any reference to that provision, he must accompany his petition for a sale of land by an account of the personal estate and debts, as far as he can discover the same. If the general inventory had been previously filed, and there was no account beyond a reference to that document, it would not, I think, be sufficient, and the order to sell could not be supported. I have already remarked that the requirement of an account is wholly independent of that relating to the inventory; the one must be furnished, although the other may be on file. There is good reason for such a rule. The administrator, before the application for a sale, may have discovered personal estate of the intestate, of which he had no knowledge at the time the inventory was filed; debts due the intestate, which were deemed bad at the time of making the inventory, may have proved available, either in whole or in part, and property which was appraised, may have advanced in value. It is, therefore, proper, as well as a plain requirement of the statute, that there should, in all cases, be an account at the time of the application for a sale of real estate."

This case, and the principle on which it rests, seem to be well supported by a long list of authorities, cited from the highest Courts of judicature.

This view is decisive of this case upon the merits. The plaintiff, upon his own showing, having no title or right to recover, the Court did not err in directing a nonsuit; nor did it err to the injury of the plaintiff in ruling out his proof; for, admitting the testimony excluded, it gave no right of action.

Several other questions have been well argued in the briefs, but it is not necessary to decide them.

Judgment affirmed.

Terry, C. J. delivered the following opinion:

I concur in the judgment upon the ground that the proceeding to procure the sale of the property was taken, the sale conducted, and the deed executed by only one of the executors of the deceased, Juana Sanchez de Pacheco, when it appears that letters testamentary were issued to two, both of whom qualified. With the last ground taken in the opinion of my associate I am in-

clined to agree, but as the question is one of much interest, and not necessarily involved in the decision of this case, I think it should be left open for further discussion.