72 U.S. 326 (____)
5 Wall. 326
TOWNSEND ET AL.
v.
GREELEY.
Supreme Court of United States.

*330 Messrs. Ewing and Vanarman, for the plaintiffs in error.
Messrs. W.M. Stewart and C. Burbank, contra, for the defendant in error.
*332 Mr. Justice FIELD delivered the opinion of the court.
This is an action of ejectment to recover the possession of a tract of land situated within the corporate limits of the city of San Francisco, in the State of California. The plaintiff in the court below, the defendant in this court, claims to be owner in fee of the premises, by virtue of an ordinance of the common council of the city, passed on the 20th of June, 1855, and an act of the legislature of the State, confirmatory thereof. At the time this ordinance was passed the city of Francisco asserted title, as successor of a Mexican pueblo, established and in existence on the acquisition of the country by the United States, to four square leagues of land, embracing the site of the present city, and had presented her claim for the same to the board of land commissioners, created under the act of March 3d, 1851, for recognition and confirmation, and the board had confirmed the claim to a portion of the land and rejected the claim for the residue. The portion confirmed included the premises in controversy in this case.
By the second section of the ordinance the city relinquished and granted all the title and claim which she thus held to the land within her corporate limits, as defined by the charter of 1851, with certain exceptions, to the parties in the actual possession thereof, by themselves or tenants, on or before the first day of January, 1855, provided such possession was continued up to the time of the introduction of the ordinance into the common council, or if interrupted by an intruder or trespasser, had been, or might be recovered by legal process.
The party through whom the plaintiff in the court below *333 traces his title was in such actual possession of the premises in controversy at the times designated by the ordinance; at least the jury must have found, under the instructions of the court, that he was in such actual possession, and in this court the finding must be taken as conclusive.
We have not looked into the rulings of the court below upon this matter, and therefore do not intimate, nor have we any reason to suppose that error intervened. We have not looked into those rulings, because if error was committed, it would not constitute ground of reversal.
The twenty-fifth section of the Judiciary Act of 1789, under which alone this court has jurisdiction to review the final judgments and decrees of the highest courts of a State, provides for such review only in three classes of cases:
First. Where is drawn in question the validity of a treaty or statute of, or authority exercised under the United States, and the decision is against their validity;
Second. Where is drawn in question the validity of a statute of, or an authority exercised under any State, on the ground of their being repugnant to the Constitution, treaties, or laws of the United States, and the decision is in favor of their validity; and
Third. Where is drawn in question the construction of any clause of the Constitution, or of a treaty or statute of, or commission held under the United States, and the decision is against the title, right, privilege, or exemption specially set up or claimed by either party under such clause of the Constitution, treaty, statute, or commission. And in these cases no error can be regarded as ground of reversal except it appear on the face of the record, and relate to these questions of validity or construction.
The inquiry then is, whether error was committed in the disposition of any questions of this character arising upon the record.
The defendants in the court below alleged in their answer to the complaint  the designation applied in the practice of California to the first pleading in a civil action, whether at law or in equity  in substance as follows: that by virtue of *334 the treaty of Guadalupe Hidalgo, between the United States and the Republic of Mexico, the ownership and fee of the premises in controversy passed to the United States; that by force of the act of March 3d, 1851, to ascertain and settle private land claims in California, and the final decree of the board of commissioners created under that act, the ownership and fee of the premises vested in the city of San Francisco; and that by various mesne conveyances and ordinances of the city, and acts of the legislature of the State, they passed to one Mumford, under whom one of the defendants holds as tenant, and for whom the other has acted as agent.
On the trial the defendants produced the petition of the city of San Francisco to the board of land commissioners for confirmation of the claim asserted to four square leagues; the decision of the board confirming the claim to a portion of the land; the dismissal of the appeal on the part of the United States by order of the District Court, in March, 1857; the recovery of a judgment against the city; the issue of an execution thereon; the purchase of the premises by one Wakeman; the delivery of a sheriff's deed to him; and the transfer of his title by sundry mesne conveyances to Mumford.
Upon objection the evidence thus offered was excluded on various grounds, and among others that the title of the city to the premises was not the subject of seizure and sale under execution. This ruling denied the position assumed by the defendants in their answer respecting the operation of the treaty, the act of Congress, and the decision of the board in passing a fee simple title to the city; for if the city had in this way, or in any other way, become invested with a title in fee simple at the time the judgment was docketed or the execution was issued, there could be no question that the title passed by the sheriff's sale and deed.
The treaty of Guadalupe Hidalgo does not purport to divest the puèblo, existing at the site of the city of San Francisco, of any rights of property, or to alter the character of the interests it may have held in any lands under the former government. It provides for the protection of the *335 rights of the inhabitants of the ceded country to their property; and there is nothing in any of its clauses inducing the inference that any distinction was to be made with reference to the property claimed by towns under the Mexican government. The subsequent legislation of Congress does not favor any such supposition, for it has treated the claims of such towns as entitled to the same protection as the claims of individuals, and has authorized their presentation to the board of commissioners for confirmation.
Nor is there anything in the act of March 3d, 1851, which changes the nature of estates in land held by individuals or towns. One of the objects of that act was to enable claimants of land, individual or municipal, by virtue of any right or title derived from Spain or Mexico, to obtain a recognition of their claims, and, when these were of an imperfect character, to furnish a mode for perfecting them.
Thus the government provided for discharging the obligation of protection cast upon it by the stipulations of the treaty, and at the same time for separating private lands from the public domain. By proceedings under that act, imperfect rights  mere equitable claims  might be converted by the decrees of the board or courts, and the patent of the government following, into legal titles; but whether the legal title thus secured to the patentee was to be held by him charged with any trust, was not a matter upon which either board or court was called upon to pass. If the claim was held subject to any trust, before presentation to the board, the trust was not discharged by the confirmation and the subsequent patent. The confirmation only enures to the benefit of the confirmee so far as the legal title is concerned. It establishes the legal title in him, but it does not determine the equitable relations between him and third parties. It is true if a claim were presented by one designating himself as trustee, executor, or guardian, or if such relation of the claimant to others appeared in the examination of the case before the board or courts, the decree might declare that the confirmation was to the claimant in such fiduciary character. But if the trust was not stated, and did not *336 appear, the legal title was none the less subject to the same trust in the hands of the claimant.
By the laws of Mexico, in force at the date of the acquisition of the country, pueblos or towns were entitled, for their benefit and the benefit of their inhabitants, to the use of lands constituting the site of such pueblos and towns, and of adjoining lands, within certain prescribed limits. This right appears to have been common to the cities and towns of Spain from an early period in her history, and was recognized in the laws and ordinances for the settlement and government of her colonies on this continent. These laws and ordinances provided for the assignment to the pueblos or towns, when once established and officially recognized, for their use and the use of their inhabitants, of four square leagues of land.
It may be difficult to state with precision the exact nature of the right or title which the pueblos held in these lands. It was not an indefeasible estate; ownership of the lands in the pueblos could not in strictness be affirmed. It amounted in truth to little more than a restricted and qualified right to alienate portions of the land to its inhabitants for building or cultivation, and to use the remainder for commons, for pasture-lands, or as a source of revenue, or for other public purposes. This right of disposition and use was, in all particulars, subject to the control of the government of the country.
The royal instructions of November, 1789, for the establishment of the town of Pictic, in the province of Sonora, were made applicable to all new towns which should be established within the district under the Commandant General, and that included California. They gave special directions for the establishment and government of the new pueblos, declared that there should be assigned to them four square leagues of land, and provided for the distribution of building and farming lots to settlers, the laying out of pasture-lands, and lands from which a revenue was to be derived, and for the appropriation of the residue to the use of the inhabitants
*337 It is evident from this brief statement that these lands were not assigned to the pueblos in absolute property, but were to be held in trust for the benefit of their inhabitants.
This is the view taken by the Supreme Court of the State of California after an extended and elaborate consideration of the subject.[*]
This view was also taken by the Circuit Court of the United States, in the final decree confirming the claim of the city to her municipal lands. Since the trial of the present cause in the court below, the appeal taken by the city from the decree of the board of commissioners has been heard by the Circuit Court of the United States, to which the case was transferred under the act of July 1st, 1864.[] That decree declares that the confirmation "is in trust for the benefit of the lot-holders, under grants from the pueblo, town, or city of San Francisco, or other competent authority, and as to any residue, in trust for the use and benefit of the inhabitants of the city." From this decree the United States and the city of San Francisco appealed, the United States from the whole decree, and the city from so much thereof as included certain lands reserved for public purposes in the estimate of the quantity confirmed; but during the present term of this court both parties have, by stipulation, withdrawn their objections, and their respective appeals have been dismissed. It is therefore now the settled law that the municipal lands held by the city of San Francisco, as successor to the former pueblo existing there, are not held in absolute property, but in trust for its inhabitants. Trust property, thus held, is not the subject of seizure and sale under judgment and execution against the trustee, whether that trustee be a natural or an artificial person.
JUDGMENT AFFIRMED.

NOTE.
Another case  Townsend v. Burbank  substantially the same in question and principle with the one preceding and like it from *338 the Supreme Court of California, was decided in the same way with it: the CHIEF JUSTICE delivering the judgment of this court
AFFIRMING THE JUDGMENT BELOW.
NOTES
[*] Hart v. Burnett, 15 California, 530; Fulton v. Hanlow, 20 Id. 480.
[] 13 Stat. at Large, 333; 3 Wallace, 686.