[Decided January 31, 1888.]

## MARIA J. GALLIHER *v.* H. P. CADWELL.

1. PUBLIC LANDS—HOMESTEAD — IMPROVEMENTS — GOOD FAITH. — A person availing himself of the benefits of the homestead law must show good faith, and a *bona fide* intention to establish a residence, and to make improvements upon the land, and to reside upon the land as his home, and cultivate the soil. A mere colorable attempt to do so, not followed by continuous residence and cultivation, for the purpose of speculation or to strip the land of its timber, is not a compliance with the homestead law, and makes the entry void *ab initio.*

2. NOTICE—RECORD—EVIDENCE.—The record in the auditor's office of the proper county of a claim and an application to enter land under the homestead law, not being entitled to record, does not impart constructive notice of anything therein stated. Neither do abandoned improvements of little value, overgrown with timber upon land, tend to show actual notice of the occupancy of the land as a homestead.

3. PLEADINGS—DEFECTIVE IN—WAIVER OF—AMENDMENT.—Where parties to an action, without objection, take evidence upon matters which ought to be pleaded as an affirmative defense, and the case is submitted by the parties to the court for decision upon such evidence, and without objections to the form of the pleadings, the court ought to disregard this defect in the pleadings or order the same to be amended to conform to the evidence.

4. TIMBER ACT OF 1878—RES ADJUDICATA—DEFAULT—ESTOPPEL.—An applicant to enter land under the timber act of congress is required to publish notice of his intended entry, and such publication, when duly made, is notice to the whole world; and an adjudication of the land office, after such notice, that the land to be entered is unoccupied public land and subject to such timber entry, is binding upon all private parties claiming adversely and failing to contest, and operates as a judgment of default against them, and estops them from relitigating that question.

5. SAME—ESTOPPEL—TENDER—PAYMENT—EQUITY.—When a party has been allowed to perfect his entry under the timber act, and having had no notice of any adverse claim to the same land, and having paid for the same and having made valuable improvements thereon, he cannot be charged in equity as a trustee holding the legal title for such adverse claimant, until the latter tenders payment of the purchase price and the costs of the improvements made by the timber claimant.

6. SEMBLE. That if such adverse claimant has, without remonstrance, permitted sales and improvements to be made by the timber claimant, who has had no notice of such adverse claim, an estoppel would arise against the assertion of the rights of the former.

APPEAL from the District Court holding terms at Tacoma. Second District.

This is a suit in equity brought by the appellee H. P. Cadwell to quiet the title to the premises described in the complaint.

The complaint alleges ownership and possession of the land in controversy and the adverse claim of title by the appellant thereto, alleged to be without right, and prayed for a decree to quiet the title and for an injunction against appellant restraining her perpetually from asserting any claim whatever to said land adverse to appellee, and for general relief. There were other defendants joined with the appellant alleged as claiming adversely, and as against them the complaint was taken as confessed, and a decree was rendered against them. The appellant Maria J. Galliher answered by a denial of all the material allegations in the complaint, and interposed an equitable counter-claim, whereby she sought to charge the appellee, as trustee of the lands described in the complaint, and to compel a conveyance of the legal title thereof to plaintiff. She alleged, in substance, her marriage and coverture with one Silas Galliher, who, on August 10, 1872, filed as an original entryman in the United States land office, at Olympia, Washington Territory, his application to enter under the homestead law of the United States the premises described in the complaint, the same being then an unoccupied, surveyed, and platted portion of the public lands of the United States, subject to homestead entry.

That said Silas Galliher paid the fees and commissions as required by law, and received a duplicate homestead receiver's receipt therefor, and thereafter immediately settled upon, improved, cultivated, and resided upon said tract of land from the date of said entry until the date of his death, which happened on April 18, 1873, on which day he died intestate. That after his death the widow, the appellant in this case, remained in the sole, quiet, and peaceable possession of said premises, continuing residence, cultivation, and improvements for the statutory period; and that by mistake she neglected to make final proof of the homestead entry within the time prescribed by law; but that

on November 24, 1880, she applied to the land office to purchase the land under the second section of the act of congress approved June 15, 1880, entitled "An act relating to the public lands of the United States," as the widow and heir of said Silas Galliher, and in behalf of his other heirs, there being no adverse claim thereto; and that she duly tendered the purchase price for the land, with due proofs of residence and cultivation, which application was rejected by the local land office; and that upon appeal successively to the commissioner of the general land office and the secretary of the interior the ruling of the local land office was affirmed, which ruling was alleged to have been a mistake of law by said several officers of the executive department. That pending said appeals, one Wing applied to enter said tract of land under the timber act of June 3, 1878, whose application was allowed by the land department, after proof made by him, and that on April 20, 1882, a patent issued to Wing, conveying to him the land in dispute.

That said Wing, when making the entry, stated, under oath, that the land was unfit for cultivation, and valuable chiefly for its timber; that it was "uninhabited" and "contained no improvements," which allegations are required to be proven satisfactorily before an entry can be perfected under said timber act. That said sworn statements by Wing were false, and known by him to have been so; and that by this fraud practiced upon the office, a patent was wrongfully issued to him by the government. That Wing and his subsequent grantees all had full notice and knowledge of the adverse claim of the appellant and of her equitable interest to the land; and that the subsequent grantees of Wing purchased the land without consideration, and for the purpose of defrauding the appellant.

The appellant also tendered and brought into court the purchase price of the land paid by Wing to the government, to be paid as the court should direct, and prayed for a decree declaring the appellee as a trustee, and directing a conveyance of the legal title, and for general relief. The plaintiff in reply denied the material allegations in the

counter-claim, excepting the homestead entry and sub-
sequent death of Galliher, and alleged the due cancellation
of the homestead entry by the land office on the ground of
abandonment of the same by Galliher and those claiming
under him, and the want of good faith by the claimant in
the inception of the entry, and the neglect of the parties to
comply with the provisions of the homestead law in the
matter of proof, and in the residence upon and the cultiva-
tion of the lands.

The reply further alleged that, at the time of the entry
under the timber act by Wing, he and those claiming under
him had knowledge and notice of the final rejection of the
homestead claim of Galliher by the land department, and,
relying upon the same, made valuable permanent improve-
ments of the same, thereby permanently increasing the
value of the land by at least $20,000. Thereupon proofs
were taken and the cause tried by the court. From the
evidence the court found the following facts:

That on or about March 1, 1886, plaintiff herein filed her
petition, showing that she was in possession of a certain
parcel of land, to-wit: Lot four (4), situated in section 10,
township 20, north of range 3 east, in Pierce county, Wash-
ington Territory, and claiming to be the absolute owner
thereof. That defendant Maria J. Galliher made some
claim thereto, and asked to have her title quieted.

In July, 1886, defendant Maria J. Galliher filed her an-
swer, denying plaintiff's title and alleging title in herself by
virtue of an original entry on said land by her husband,
Silas Galliher, about August 10, 1872.

To this plaintiff replied, putting in issue the legal effects
of said entry of said Galliher. That plaintiff is in posses-
sion of said premises, and has been, through her grantors,
under patent originally issued to Francis B. H. Wing,
April 20, 1882, upon his application of August 30, 1881.
That Silas Galliher, on August 10, 1872, filed an original
entry on this land, and soon after died. That his widow,
this defendant, built a small house on said land, and lived
there irregularly, off and on, from 1873 to 1875.

That the Galliher entry was canceled by the land department in Olympia, Washington Territory, December 4, 1879. That she thereupon applied to purchase said land, which application was rejected December 14, 1880, and approved by the secretary of the interior June 1, 1881, in an order in words as follows:

"It appears that this tract of land was embraced in the homestead entry of Silas Galliher, made August 10, 1872. Mr. Galliher died April 18, 1873, and his entry was canceled December 14, 1879, for want of final proof within the statutory period of seven years after due notice. It was competent for his widow to have perfected said entry after his death, under section 2291 of the Revised Statutes. This she failed to do, but *abandoned* the land, making no legal claim thereto until November 23, 1880, the date of her present application."

That the defendant Maria J. Galliher first went upon said land in August, 1873, and made flying visits thereto each spring and fall during the years of 1873, 1874, and 1875, and was not, in all, upon said land to exceed thirty weeks. That her home in the meantime was in Olympia.

That the defendant Francis B. H. Wing went at once into possession of said land, and has ever since continuously, by himself and his successors, held uninterrupted possession of said land, since said patent issued to him by the government in 1882.

That the defendant Maria J. Galliher willfully, and with full intent so to do, abandoned said land in February, 1876, and has not since been upon said land, or made any claim thereto, to the title, or to the possession thereof, until brought into court by this plaintiff in this suit. That the defendant Maria J. Galliher has taken no legal steps to assert her claim to said land since the rejection of her claim by the government, although more than four years after a patent has issued for said land, and more than ten years since she was last upon said land with any intent of remaining, and that she now makes no claim until brought into court by this plaintiff. That at the time she aban-

doned said land it was of little value. That when she makes her claim now it has appreciated much in value.

The court thereupon rendered judgment in favor of the appellee, as prayed for, quieting the title and enjoining the defendant from asserting any adverse claim to the land in controversy. From this judgment the appellant prosecuted the present appeal.

*Mr. John P. Judson,* and *Messrs. Porter & Robinson,* for the Appellant.

The fact of the cancellation of a homestead entry for want of final proof within the statutory period does not impair the right of a person otherwise entitled to purchase under the act of congress of June 15, 1880, entitled "An act relating to the public lands of the United States." (*In re Miller,* 9 Copp's Land Owner, 57; *In re Bishop,* 9 id. 95.) Residence, cultivation, and improvement need not be shown under said act of June 15, 1880. (*Bray* v. *Colby,* 10 Copp's Land Owner, 360.) Irregularity, or even illegality of the entry, at its inception, is no bar to the right of purchase under said act. (*In re August Smith,* 10 Copp's Land Owner, 110.) Homestead claimant has the right to purchase under said act the land embraced in his entry, after the same had been canceled for abandonment. (*N. P. R. R. Co.* v. *Burt,* 12 Copp's Land Owner, 138; *Simpson* v. *Foley,* 12 Copp's Land Owner, 131; *N. P. R. R. Co.* v. *McLean,* 14 Copp's Land Owner, 75.) Wing having had notice of the uniform ruling of the land department, and of the adverse claim of appellant remaining undetermined in the interior department at the time of his timber entry, is not protected as an innocent purchaser without notice. (*S. P. R. R. Co.* v. *Dull et al.,* 22 Fed. Rep. 480.) The holder of the legal title of land which, in equity and good conscience, ought to be vested in another, is held in a court of equity the trustee of the true owner, and he will be compelled to convey the legal title accordingly. (*Rector* v. *Gibbon,* 111 U. S. 291; *Shepley* v. *Cowan,* 91 U. S. 330; *Moore* v. *Robbins,* 96 U. S. 530; *Quinby* v. *Conlan,* 104 U. S. 420; *Johnson* v. *Towsley,* 13 Wall. 80.

*Mr. E. P. Cadwell,* and *Mr. T. C. Sears,* for the Appellee.

That there must be good faith, *bona fide* intention, followed by actual residence and cultivation on part of homestead claimant, to secure a title, the counsel cited the following: *In re James Galliher,* 1 Copp's Public L. L. 433; id. 416; *Lyttle* v. *Arkansas,* 22 How. U. S. 193; *In re G. S. Bishop,* 9 Copp's Land Owner, 95; *In re Cadwallader,* 13 id. 79; *Leitner* v. *Hodge,* id. 135; *Harris* v. *Radcliff,* 10 id. 208.) Abandonment of possession of public land is abandonment of claim. (*Page* v. *Hobbs,* 27 Cal. 483; 1 Copp's Public L. L. 506; *Morenhaut* v. *Wilson,* 52 Cal. 263; *Lonsdale* v. *Portland,* 1 Deady, 39; *Wyman* v. *Hurlburt,* 12 Ohio, 81, 40 Am. Dec. 461, and notes; 9 Copp's Land Owner, 97.) When the authority to hear and determine certain matters is vested exclusively by law in a special tribunal, the latter's decision upon such matters is final and conclusive. (*Comeygis* v. *Varse,* 1 Peters, 193; *Johnson* v. *Towsley,* 13 Wall. 72; *Warren* v. *Van Brunt,* 19 Wall. 653; *Lyttle* v. *Arkansas,* 9 How. U. S. 314.)

When government issues a patent the presumption arises, if there have been claimants to the land patented, that such claimants have abandoned it, and that all the conditions necessary to justify the patent have been complied with. (*Minter* v. *Crommelin,* 18 How. U. S. 87.) The jurisdiction conferred upon the land department is exclusive and judicial in its nature, and its determination as to the rights of the different claimants is final and conclusive, except in cases of fraud or mistake. (*Garland* v. *Wynn,* 20 How. U. S. 6; *Shepley* v. *Cowan,* 91 U. S. 330; *Moore* v. *Robbins,* 96 U. S. 535; *Hosmer* v. *Wallace,* 47 Cal. 461; *Danforth* v. *Morrical,* 84 Ill. 456; *U. S.* v. *Throckmorton,* 98 U. S. 61.) A grant by the government within its lawful authority cannot be attacked collaterally. (*U. S.* v. *Stone,* 2 Wall. 525; *Mowry* v. *Whitney,* 14 Wall. 434.) As to under what circumstances alleged fraud can be inquired into, counsel cited *Vance* v. *Burbant,* 101 U. S. 514.

Mr. Justice LANGFORD delivered the opinion of the court.

This is a case wherein the appellee brought her suit in the District Court against the appellant, to quiet title to a certain tract of land.

The appellee holds title by virtue of a patent from the United States to one Wing. The appellant claims that she was entitled to enter the land under the homestead laws long prior to the entry and patent to Wing, which right she was deprived of by an erroneous decision of the land department of the United States, and hence is entitled to a decree against appellee that he hold the title in trust for her.

It is conceded by admissions upon the argument that, when this action was commenced, appellee and others holding under the patent had improvements upon the tract of great value, and the tract and the improvements thereon are worth about $20,000, and this is a test case to try the rights of all holding under the patent.

It is further conceded that Silas Galliher, the husband of appellant, upon the 10th day of August, 1872, made a formal entry of the tract under the homestead act, and died about eight months thereafter, at Olympia, Washington Territory.

The first point to be decided is whether this entry was made in good faith, or was fraudulent from the beginning.

At the time of the entry, said Galliher and his wife had their domicile and home at Olympia, had property there, and were engaged in keeping a hotel there. They had children, and were educating them there. Olympia is forty miles from the tract of land in dispute. The tract of land consists of gravelly, barren land, covered with timber, adjoining the city of Tacoma. The husband during his lifetime, of about eight months after the entry, continued his residence and business at Olympia, and during that time had not done anything upon the land except cut down a few trees and a little brush, and lay a few logs for the foundation of a log cabin.

There is no evidence that he moved to the land, or made any preparation to move there, or made any declaration of such intent.

The character and small amount of land make it extremely improbable that any sane man could have intended at that time to move upon and cultivate this land, for the purpose of making a farm out of it, as his home. His conduct and words gave no evidence of such intent; his failure to prepare a residence for more than six months, and failure to make any change in Olympia which would indicate that he intended to change his residence, are circumstances which satisfactorily show that, at the time he made the formal entry, he did not intend to reside upon and cultivate the land, as the homestead law requires. The intent must have been to enter the land for speculation, either to use or sell the timber, or for some other purpose.

The fact that the land was valuable only for timber, and that its value for all purposes was, some years after his entry, only about three dollars per acre, shows that he never intended to reside upon the land as his home, and farm and cultivate it.

If his entry was made for any other purpose than this, it was fraudulent and void, and no equity can be founded upon it.

This is not a case of an originally valid entry afterwards abandoned, but of an originally void entry. The above considerations alone would be sufficient to prevent any holder of a legal title to be held a trustee for the fraudulent entryman.

It is claimed that Wing, when he made application to enter the land under the timber act, had no notice of the Galliher equity.

The notice claimed is that the appellant had made an application to enter the land at the United States land office, which had there been adjudicated against her; that she had filed notice of this in the auditor's office of the county wherein the land is situated; that he could have seen improvements upon the land made by appellant after her husband's death.

1. Of the notice in the auditor's office, it is sufficient to say that there was no law authorizing it; and it was not, therefore, implied notice, and there is no evidence that appellee or Wing ever saw it or heard of it.

2. As to the log cabin and a little fencing rotting upon the land, and the clearing, if any, overgrown with pine timber, these did not tend to prove the land had been occupied as a homestead, or occupied at all. The appearances of the land would rather indicate the presence of trespassers on the public land to strip it of timber, which had been abandoned by them.

3. As to the adjudication against appellant in the land office, which was June 1, 1881, no doubt all parties had notice of this adjudication and many of the reasons given therefor.

The adjudication was, in effect, that the appellant had no right to enter the land, and that the land was public land of the United States subject to entry. This was a binding decision upon all parties until it was reversed; and, instead of being a notice that appellant had a right, it was notice that she had no right. True, the reasons given for the decision might have been erroneous; but, if they were, this did not tend to vitiate the decision itself. No doubt both the appellant and Wing supposed that the reasons given were correct law until long after Wing had received a patent.

True, the affirmative plea that the appellee was an innocent purchaser, without notice, is not formally made; but each side, without objections, took evidence upon this point, and the case was submitted to the court below upon this evidence, without objections to the form of the pleadings. Had the point been made in the court below, that court would rightly have disregarded it or ordered the pleadings to be amended to conform to the evidence. The want of an affirmative plea should have been disregarded in the court below, as it was, and will be disregarded here.

The appellant knew of this decision, and acquiesced in it without objection until 1884, and long after patent had issued to Wing. She could not have applied to open the case, or had a rehearing until 1882, when the Miller case was decided. In the latter case, the reasons for deciding the case of Galliher were disapproved.

In the meantime, on the 20th of December, 1881, acting

on the decision in the Galliher case, Wing applied to enter. In this application to enter, the law requires a notice to be published to all the world of the intended entry. This notice describes the land that is to be entered, and states that it is to be entered because it is more valuable for timber than for agriculture. Appellant had this notice, but made no objection to Wing's entry in the United States land office, or elsewhere, until long after Wing had obtained his patent and paid his money. The patent was issued to him April 20, 1881.

The adjudication that this was unoccupied public land, more valuable for timber than for anything else, was the foundation of the patent. This adjudication was binding upon all private parties, and upon the appellant among them; and after this judgment by default, appellant cannot relitigate the question.

In 1884 appellant applied to the general land office to be allowed to enter. That office wrote her of the above adjudications in that office, and that they were final. From this time, the appellant never attempted to set up any claim until she answered in this action.

In the meantime, the property had been laid out into town lots and valuable improvements put upon them; and after this, appellant first makes known that she had a claim, and insists upon it. If she had a right, which she had not, and had permitted those sales and improvements without notice, she could not now assert a right, but would be estopped from so doing. If she were not entirely estopped, she would have to tender payment of the price paid by appellee and the costs of the improvements before she could ask a court of equity to help her. Instead of this, she does not offer to pay anything except the government price, which would be only a few cents.

The evidence that appellant attempted to perfect her claim by improving the land prior to 1876, if her evidence were conclusive of her *bona fides*, would not avail her, for the original entry, being fraudulent and void, could not be perfected. The evidence is far from showing that she ever intended this

claim for her home or farm. It rather discloses the fact that she continued to reside at Olympia, making occasional visits to the land for speculative purposes. No improvements made under such circumstances could, in any way, give her a right or perfect a right.

Wing never by any act of his prevented appellant from perfecting her claim in the land department. He misled that department neither as to law nor fact.

Hence this case is not similar to any case cited wherein a patentee was held trustee for another. The equities are as strong in favor of Wing as in favor of appellaut, and, were he a party, his legal title would prevail.

Much stronger are the equities of appellee, and for this reason the conclusion is still stronger that appellee's title shall prevail.

Let the judgment be affirmed.

Mr. Chief Justice JONES concurred specially, as follows:

From an examination of the record in this case, I cannot resist the conclusion that Silas Galliher, in his lifetime, did not, in good faith, enter the land in question, and the appellant's subsequent acts lacked the same essential quality.

The whole proceeding was one of many similar shams entered upon and persisted in for the purpose of defrauding the government by a bald pretense of complying with the requirements of the beneficent homestead law, while in fact no such real purpose existed, and they were not complied with or attempted to be.

Instead of acquiring a home or cultivating the soil, there may and has been, in fact, a purpose to speculate in the future in city lots, but the idea of a homestead never existed.

The judgment should be affirmed.

Mr. Justice TURNER delivered the following dissenting opinion:

On the 10th day of August, 1872, the husband of the appellant, Silas Galliher, made a homestead entry of lot

four (4), section ten (10), township twenty (20) north, of range three (3) east, of the Willamette meridian, situated in Pierce county, Washington Territory, and containing fifty-seven and one-fourth ($57\frac{1}{4}$) acres of land. Galliher died April 13th following, never having resided on said land.

Before his death, however, he laid the foundation for a house upon the land, which house his widow erected after his death.

He also slashed (cleared) some land on the place. His widow moved upon the land with her family about three months after her husband's death, and spent about $400 improving the place. She lived upon the place with her family a part of the time each year until the year 1876.

Upon this point she testified: "The first two years I spent more time on the claim than I did at Olympia, but the last two I spent more of my time at Olympia." She ceased to make the claim her home in 1876, "because," as she says, " I had to. My money was all gone, and I had no way on it to make a living in 1873. I could not support my family if I remained there, and I had no money."

The homestead entry of Silas Galliher was canceled by the commissioner of the general land office, December 14, 1879, for want of final proof within the statutory period of seven years, after due notice.

On November 23, 1880, Mrs. Galliher filed with the register and receiver, at Olympia, an application to purchase said tract of land under the provisions of an act of congress entitled "An act relating to the public lands of the United States," approved June 15, 1880, and at the same time tendered to the receiver the purchase price of said land. Her application and tender were rejected by the local officers, and on appeal to the commissioner of the general land office and the secretary of the interior, respectively, this decision was successively affirmed, on the ground that Mrs. Galliher had lost the right to purchase under the act of June 15, 1880, by reason of her abandonment of the homestead.

On the 20th of December, 1881, subsequent in point of

time to the application of Mrs. Galliher to purchase under the act of June 15, 1880, one F. B. H. Wing entered the tract of land in question, under and by virtue of an act of congress approved June 3, 1878, entitled "An act for the sale of timber lands in the States of California, Oregon, Nevada, and in Washington Territory," and he received patent to the land April 20, 1882.

The appellee derives title to the tract of land by mesne conveyances through successive grantees of the patentee, Wing.

This suit was brought by the appellee to quiet the title to said premises, and the appellant was made a party defendant.

The latter, in her answer, set up the facts above recited, made a tender of the purchase price of said land, and prayed that the appellee be decreed to hold the title to said tract of land in trust for herself and the heirs of her husband, and that appellee be required to convey the same to her by a good and sufficient deed.

The court below found against the appellant, and the whole case is now before us for review:

1. If the application of Mrs. Galliher to purchase under the act of June 15, 1880, was improperly rejected by the officers of the land department, then she is entitled to the relief prayed against the appellee, unless other facts, which I shall presently mention, constitute a bar. (*Rector* v. *Gibbon,* 111 U. S. 291; *Townsend* v. *Greeley,* 5 Wall. 326–35; *Carpenter* v. *Montgomery,* 14 Wall. 480–96; *Shepley* v. *Cowan,* 91 U. S. 330; *Moore* v. *Robbins,* 96 U. S. 530; *Quinby* v. *Conlan,* 104 U. S. 420; *St. Louis Smelting Co.* v. *Kemp,* 104 U. S. 636; *Johnson* v. *Towsley,* 13 Wall. 80; *Silver* v. *Ladd,* 7 Wall. 228; *Cunningham* v. *Ashley,* 14 How. U. S. 377 et seq.)

2. The application of Mrs. Galliher to purchase the land was rejected by the land department, on the theory that one who abandoned a homestead entry on the public lands was not entitled to the benefit of the provisions of the act of June 15, 1880. This was the first case where such a hold-

ing was made. Soon after the decision of the Galliher case another case, involving the same questions, was brought before Secretary Teller, and he explicitly overruled the Galliher case. The following is his opinion:

"Secretary Teller to Commissioner McFarland, June 3, 1882:

"I have considered the appeal of John W. Miller from your decision of October 22, 1881, rejecting his application to purchase under the act of June 15, 1880 (21 Statutes, 237), the E. ½ of NE. ¼ of 6, 21 S., 27 E., Visalia, California, entered April 28, 1873, homestead No. 777.

"It appears that your office canceled the entry, June 17, 1880, on failure of Mr. Miller to make final proof within seven years from its date; that this land is still vacant, and that the fact of such cancellation is the only reason assigned for refusal to allow the present application; your decision being based on that of my predecessor in the case of Maria Galliher, June 1, 1881.

" The act of 1880, section 2, specifically grants the right of purchase in all cases where the land was properly subject to the original entry, limited only by the proviso, that ' this shall in no wise interfere with the rights or claims of others who may have subsequently entered such lands under the homestead law.'

"As no subsequent entry upon any tract taken as a homestead can be made until after cancellation of such original homestead entry, this proviso would have nothing in any case whatever to operate upon, except upon the theory that the right of purchase thus limited might be exercised as well after cancellation as before, and that the only purpose of congress was to save any entry subsequently made in accordance with existing laws from prejudice or interference under the new enactment, but to bestow upon the original claimant the otherwise restricted right to acquire by purchase the land which he failed to secure by strict compliance with the law under which he had originally entered.

" It can make no difference to the government whether the entry has been canceled or not. The mere act of cancellation has no force in connection with the statute.

"In this case less than two months had elapsed after the expiration of the seven years, and the entry was actually canceled after the passage of the remedial act; while there are on your files hundreds of entries still uncanceled, where months and years have passed since the expiration of the seven years limited by law for making final proof, yet the rule has not been applied to these, and the parties making such entries have been allowed the benefit of the act of 1880, whenever applied for.

"There can be no reason for this invidious distinction.

"Upon full consideration, I am convinced that the decision in the case of Galliher must have been inadvertent, and should not stand as a precedent—the true construction, as I apprehend, being as above stated. I accordingly reverse your decision, and direct the allowance of Miller's application." (Copp's Land Owner, vol. 9, p. 57.)

This later decision has been followed by an unbroken line of decisions in the interior department, with one exception, down to the present time. The exception was an apparently inadvertent decision, made by Acting Commissioner Stockslager. The decision of Secretary Teller was affirmed by Secretary Lamar at a later period than the decision of Acting Commissioner Stockslager, and still later by Acting Secretary Muldrow. (*Northern Pacific Railroad* v. *Burt*, 12 Copp's Land Owner, p. 138; *Simpson* v. *Foley*, 12 Copp's Land Owner, p. 131.)

The reasons for the views which at present prevail in the interior department are clearly stated in the opinion of Secretary Teller, and they are satisfactory to me. I conclude, therefore, that the decision on Mrs. Galliher's application to purchase was wrong, and that she was entitled to purchase.

3. The last proposition is not true if the original entry of Silas Galliher was fraudulent. I agree that one can acquire no rights to purchase under the act of June 15, 1880, by reason of an attempt to defraud the government through and by means of the homestead act. But I can find nothing in the record which establishes that Silas Galliher in-

tended any fraud when he made his original entry. The
poor character of the soil of the tract in question, and the
fact that it was heavily wooded, is urged as evidence of
fraudulent intent. But it is more than likely that Galliher
had the foresight to discern the future value of the land, by
reason of its proximity to the growing city of Tacoma. If,
foreseeing this, he was ready to undergo the hardships inci-
dent to making a home on the place for the required time,
and of cultivating the same, his enterprise involved no
fraud that I can see. It is true that he did not reside upon
the place prior to his death, but he showed good faith by
commencing the erection of a house, which his wife after-
wards completed, and by slashing the undergrowth on the
premises, or on a part of them. Why he did not do more
is explained by the fact, stated in the testimony of his
wife, that he was sick for a year before his death. Neither
failure to reside upon land after homestead entry, nor aban-
donment after residence under such entry, constitute fraud.
This is the holding of the land department. *(Case of Au-
gust Smith,* 10 Copp's Land Owner, p. 104.)

The holding of the department is in consonance with the
law. There is nothing in either of said acts, construed ac-
cording to the principles of law applicable to the doctrine
of fraud, which will justify a decision that they constitute
fraud. I conclude, therefore, that the homestead entry of
Silas Galliher was not fraudulent.

4. It was insisted on the hearing that the appellant had
slept on her rights until this land had become valuable,
and that it was inequitable for her to now make her claim.

Patent was granted Wing April 20, 1882. Mrs. Galliher
was brought into this suit, and required to formulate her
claim to the land, in the summer of 1886. This was about
four years after the patent to Wing. She was not barred
of relief by the statute of limitations, nor has she slept an
unreasonable length of time on her rights. There is abso-
lutely nothing in the record upon which to ground a plea of
equitable estoppel.

5. Neither is there anything upon which to found the de-

fense that the appellee or any of her grantors were purchasers for value without notice. This is a matter to be affirmatively pleaded. (Pomeroy's Eq. Jur., vol. 2, sec. 784.)

Not only is this defense not pleaded by appellee, but the reply expressly admits notice of the decision of the secretary of the interior adverse to Mrs. Galliher on the part of the appellee and all her grantees. If they knew of this decision, they had actual notice of the claim of Mrs. Galliher and of the equities in her favor.

For the foregoing reasons, I am of the opinion that the appellant was entitled to the decree prayed for in her answer, and I dissent from the conclusion reached by the majority of the court.