## ROMERO v. JANSS INV. CORPORATION.
### No. 7517.

Circuit Court of Appeals, Ninth Circuit.
June 8, 1936.

Jones, Hoyt & Rifkind, of Los Angeles, Cal. (Cressaty & Elstein, Leo V. Youngworth, J. Harold Decker, and Harry Graham Balter, all of Los Angeles, Cal., of counsel), for appellant.

Gibson, Dunn & Crutcher, Elmo H. Conley, O'Melveny, Tuller & Myers, Pierce Works, and Homer I. Mitchell, all of Los Angeles, Cal., for appellee.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment in an action at law in ejectment in which the appellant, administrator of the estate of Maria Dorotea Alanis de Romero, seeks to establish his right to possession of land situated in the county of Los Angeles, state of California. Appellant's case rests upon a claimed Mexican title vesting in his intestate as the alleged owner of the one-half community interest of her mother in the land in question.

The title of the appellee, defendant below, rests upon a patent from the United States made to certain persons, Wilson and Sanford, who had acquired a Mexican title to the property prior to March 3, 1851. They had had it adjudicated as conveying a valid title to them under the Land Commission Act of that date, the patent being issued pursuant to the provisions of the statute after the adjudication. The title so acquired by Wilson and Sanford was by mesne conveyances transferred to the Holmby Corporation, which, in turn, trans-

ferred portions of the land in question to the appellee.

■ Dorotea failed to file any claims before the Commission created by the Act of March 3, 1851 (9 Stat. 631), and the first question presented by the appeal is whether she can assert any legal title to the land of which Wilson and Sanford were adjudicated by the Commission to hold legal title, patent for which was subsequently granted by the United States.

This question has long been settled by decisions of the Supreme Court of the United States. One of the later holdings is the case of Barker v. Harvey, 181 U.S. 481, 21 S.Ct. 690, 692, 45 L.Ed. 963. In that case the then Mexican governors had granted certain property in San Diego county to one Juan Jose Warner. Warner presented his title to the Board of Land Commissioners for confirmation and the Board adjudicated the title to be in him, and subsequently a United States patent was issued to Warner pursuant to the adjudication. The act creating the Board of Land Commissioners (section 15) provided that the patent so issued "shall be conclusive between the United States and the said claimants only, *and shall not affect the interests of third persons.*" `(Italics supplied.) The plaintiffs in the Barker Case claimed title through Warner and commenced an action to quiet title. The defendants were Mission Indians whose claim to possession was based upon a right of permanent occupancy of the land under the Mexican law. The Indians had not filed their claims with the Board of Land Commissioners, and the question was whether such failure to file claims had defeated their alleged Mexican rights or whether they were protected by the provision of the statute which was incorporated in the patent that the grant "shall not affect .the interests of third persons." In holding that the Indians had abandoned .any claims founded on the action of the Mexican government, the Supreme Court states as follows:

"Undoubtedly by the rules of international law, and in accordance with the provisions of the treaty between the Mexican government and this country, the United States were bound to respect the rights of private property in the ceded territory. But such obligation is entirely consistent with the right of this government to provide reasonable means for determining the validity of all titles within the ceded terri-

tory, to require all persons having claims to lands to present them for recognition, and to decree that all claims which are not thus presented shall be considered abandoned. * * *

"As between the United States and Warner, the patent is as conclusive of the title of the latter as any other patent from the United States is of the title of the grantee named therein. *As between the United States and the Indians, their failure to present their claims to the land commission within the time named made the land, within the language of the statute, 'part of the public domain of the United States.'* * * * So far, therefore, as these Indians are concerned, the land is rightfully to be regarded as part of the public domain and subject to sale and disposal by the government, and the government has conveyed to Warner. It is true that the patent, following the 15th section of the act, in terms provides that the patent shall not *'affect the interests of third persons,'* but who may take advantage of this stipulation? This question was presented and determined in Beard v. Federy, 3 Wall. 478, 18 L.Ed. 88, and the court, referring to the effect of a patent, said (pp. 492, 493, L.Ed. p. 93):

" 'When informed, by the action of its tribunals and officers, that a claim asserted is valid and entitled to recognition, the government acts, and issues its patent to the claimant. This instrument is therefore record evidence of the action of the government upon the title of the claimant. By it the government declares that the claim asserted was valid under the laws of Mexico; that it was entitled to recognition and protection by the stipulations of the treaty, and might have been located under the former government, and is correctly located now, so as to embrace the premises as they are surveyed and · described. As against the government this record, so long as it remains unvacated, is conclusive. * * * *The term "third persons," as there used, does not embrace all persons other than the United States and the claimants, but only those who hold superior titles, such as will enable them to resist successfully any action of the government in disposing of the property.'*

"*If these Indians had any claims founded on the action of the Mexican government they abandoned them by not presenting them to the commission for consideration, and they could not, therefore, in the*

*language just quoted, 'resist successfully any action of the government in disposing of the property.' "* (Italics supplied.)

In so holding the Supreme Court follows its decisions in Botiller v. Dominguez, 130 U.S. 238, 9 S.Ct. 525, 32 L.Ed. 926, and Beard v. Federy, 3 Wall.(70 U.S.) 478, 18 L.Ed. 88.

It thus appears that appellant administrator's intestate, Dorotea, abandoned her legal title by failure to present it to the Commission and that she is therefore unable to "resist successfully any action of the government in disposing of the property" so far as such legal title is concerned.

It is contended on behalf of Dorotea's claimed interest in the land that this failure to present her title for confirmation to the Land Commission "made no difference, and a confirmation to Sanford and Wilson inured to the benefit of Maria Dorotea Alanis de Romero and her heirs," and that in an action in ejectment this beneficial holding by the successors in interest to Sanford and Wilson can be asserted as the basis of the right of possession.

This contention has been disposed of adversely to appellant's argument by the Supreme Court in the case of Carpentier v. Montgomery, 13 Wall.(80 U.S.) 480, 494, 20 L.Ed. 698. That was a suit in ejectment, where the right to possession was asserted, and a claim to no more than an equitable interest in the land was shown. One Luis Peralta, a grantee under a Mexican title, died leaving four sons, four daughters, and several grandchildren by a deceased daughter. The sons presented their claim to the Board of Land Commissioners, basing it upon an alleged devise from their father. No claim was presented on behalf of the daughters and grandchildren. The sons were adjudicated in the Commission proceedings to be the owners of the land and a patent was issued to them. In the Carpentier Case those deraigning title from the daughters and grandchildren commenced an action in ejectment against those deraigning title from the four sons. It was admitted that the legal title rested in the four sons, but it was claimed that the confirmation inured to the benefit of all the children and grandchildren. The Supreme Court in holding adversely to the contention that such a claim could support the right to possession in the action of ejectment said:

"But *it is contended that the confirmation of the title inured to the benefit of the parties really interested,* both at law and in equity, and not merely to the benefit of the confirmees. This is undoubtedly true so far as the segregation of the lands from the public domain and the extinguishment of the government title or claim of title is concerned; *but as it respects the legal estate, the confirmation inures to the confirmees alone.* The eighth and ninth sections of the act require the claimant to show not only the original title, but his own title by deraignment therefrom. Having established these the object of the inquest is attained. It satisfactorily appears that the land does not belong to the government, and the claimant appears to be the person prima facie entitled to the legal title. Hence the thirteenth section goes on to declare that for all claims finally confirmed a patent shall issue to the claimant upon his presenting to the general land office an authentic certificate of such confirmation and a plat or survey of the said land duly certified and approved by the surveyor-general of California, whose duty it shall be to cause all private claims which shall be finally confirmed to be accurately surveyed and to furnish plats of the same.

"*This language is utterably irreconcilable with the hypothesis that the legal estate devolves, upon the confirmation, to any other parties than the confirmees. The patent is to be given to them, and the legal title cannot be separated from the patent.*

"It is true that the fifteenth section of the act declares that the decree of confirmation shall be conclusive between the United States and the claimants only, and shall not affect the interests of third persons. But this was intended to save the rights of third persons not parties to the proceeding, who might have Spanish or Mexican claims independent of or superior to that presented by the claimant; or the equitable rights of other parties having rightful claims under the title confirmed. The former class could still present their claims without prejudice within the time limited by the statute. The latter class, those equitably entitled to rights in the land under the title confirmed, were not to be cut off. Their equities were reserved. But they must seek them by a proceeding appropriate to their nature and condition. *The legal title is vested in the confirmees, or* will be when the requisite conditions are

performed. *It is not in these equitable claimants. They cannot maintain an action of ejectment against the confirmees, or those claiming under them; but must go into equity, where their rights can be properly investigated with a due regard to the rights of others.* Had the daughters as well as the sons of Luis Peralta gone before the commissioners, it is possible that they would have participated in the legal advantages of the confirmation. It may now be inequitable on the part of the sons to withhold from them a due share of their father's estate. But other rights may have grown up in the meantime, rights of bona fide purchasers and others ignorant of the equities existing between the original parties, which it would be unjust to disturb. These questions can be much better examined in an equitable proceeding than they can be in this action, in which, indeed, they are entirely inadmissible.

"This view of the relative position of the parties is supported by the weight of authority. The case of Wilson v. Castro, 31 Cal. 420, is directly in point to show the form of proceeding proper for those who claim against the confirmee. In that case the claim was confirmed to the widow, who really had no interest. The brother and sister of the owner, as his heirs at law, brought a suit in equity against the widow, and obtained a decree declaring her to be seized, as trustee, for their use. In Estrada v. Murphy, 19 Cal. [248], 272, the court says: 'A court of equity will control the legal title in his (the confirmee's) hands, so as to protect the just rights of others. *But in ejectment the legal title must prevail;*' and it decided the case accordingly against the plaintiff in ejectment. In Banks v. Moreno, 39 Cal. 233, the same conclusion was reached. In that case, as in this, the plaintiff claimed under the daughters of Luis Peralta; the defendant under the sons; and it was held that the action did not lie. The same view was taken by this court in Beard v. Federy, 3 Wall. 478 [18 L.Ed. 88] and Townsend v. Greeley, 5 Wall. 326 [18 L.Ed. 547]. In the last case the court uses this language: 'The confirmation only inures to the benefit of the confirmee so far as the legal title is concerned. It establishes the legal title in him, but it does not determine the equitable relations between him and third parties.'" (Italics supplied.)

The Carpentier Case establishes the law for California, at least concerning the necessity that the claim of right to possession in an ejectment suit shall rest on the legal title. The California decisions are in accord. Frink v. Roe, 70 Cal. 296, 300, 11 P. 820; Murphy v. Crowley, 140 Cal. 141, 149, 73 P. 820; Conlan v. Quinby, 51 Cal. 412, 413; San Felipe Mining Co. v. Belshaw, 49 Cal. 655, 658.

The administrator of Dorotea's estate relies on cases of the type of Bludworth v. Lake, 33 Cal. 255, in which the court held that the title of the *patentee from the State of California* was subject to an equity in favor of parties defrauded in obtaining the patent. That was a suit invoking the equity power of the court and has no relevance here. Cf. Murphy v. Crowley, supra.

Judgment affirmed.